UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ASHLEY J. IRWIN, individually and
KIPARRA MUSIC, INC.,

        Plaintiffs,

    - against -

ZDF ENTERPRISES GMBH, a German
Corporation; ZWEITES DEUTSCHES
FERNSEHEN, a German Corporation;
A&E TELEVISION NETWORKS, a joint
venture, individually and doing
business as THE HISTORY CHANNEL;
and UKTV VENTURES LIMITED, a
United Kingdom Corporation,

        Defendants.
----------------------------------------X

04 Civ. 8027 (RWS)

O P I N I O N

A P P E A R A N C E S:

Attorneys for Plaintiffs:
    LAW OFFICES OF JEFFREY L. GRAUBART
    350 West Colorado Boulevard, Suite 200
    Pasadena, CA 91105
    By:  DAVID B. WOLF, ESQ.
        Of Counsel

    COWAN DEBAETS ABRAHAMS & SHEPPARD
    41 Madison Avenue, 34th Floor
    New York, NY 10010
    By:  DAVID B. WOLF, ESQ.
        MATTHEW KAPLAN, ESQ.
        Of Counsel

Attorneys for Defendants:
    NORWICK & SCHAD
    110 East 59th Street
    New York, NY 10022
    By:  KENNETH P. NORWICK, ESQ.
        Of Counsel

    LOWENSTEIN SANDLER
    65 Livingston Avenue
    Roseland, NJ 07068
        and
    1251 Avenue of the Americas
    New York, NY 10020
    By:  PETER L. SKOLNIK, ESQ.
        MICHAEL A. NORWICK, ESQ.
        Of Counsel



DATE FILED: 2 17 06

**Sweet, J.,**

Defendants ZDF Enterprises GMBH ("ZDFE"), Zweites Deutches Fernsehen ("ZDF"), A&E Television Networks ("AETN"), a joint venture, individually, and doing business as The History Channel, and UKTV Ventures Limited ("UKTV") have moved pursuant to Rules 12(b)(6) and 12(b)(2), Fed. R. Civ. P., to dismiss the Second Amended Complaint (the "Complaint") of Ashley J. Irwin ("Irwin"), individually, and Kiparra Music, Inc. ("Kiparra") (collectively the "Plaintiffs"). For the reasons set forth below, the motion is granted in part and denied in part.

## Prior Proceedings

On October 12, 2004, Plaintiffs filed their initial complaint. On April 20, 2005, Plaintiffs filed their Second Amended Complaint, alleging five causes of action: (1) copyright infringement under the U.S. Copyright Act (against all Defendants except UKTV); (2) conspiracy to violate U.S. copyright law (against all Defendants except UKTV); (3) copyright infringement and violation of moral rights under British Copyright Law (against all Defendants except AETN); (4) copyright infringement and violation of moral rights under German Copyright Law (against Defendants ZDF and ZDFE only); and (5) unfair competition.

Defendants moved to dismiss: (1) Claims 1, 2, and 5, for

1

failure to state a claim upon which relief can be granted; (2) all of Plaintiffs' claims against UKTV (Claims 3 and 5), for lack of personal jurisdiction over that defendant; and (3) all remaining clams on the grounds of forum non conveniens. Their motion was filed on July 8, 2005. The motion was heard and marked fully submitted on October 12, 2005.

## The Complaint

Plaintiff Irwin is a film and television composer who has won three Emmy Awards. He is a citizen of Australia and resides in Los Angeles, California. Plaintiff Kiparra is a California corporation whose shareholders are Irwin and his wife.

Defendant ZDF is a German television network that both creates and broadcasts television programming. ZDF is a not-for-profit corporation that was created jointly by the governments of the several federal states of Germany, and in many respects, is similar to the Public Broadcasting System (PBS) in the United States and the British Broadcasting Corporation (BBC) in the United Kingdom. Defendant ZDFE is a wholly owned but legally independent for-profit subsidiary of ZDF, which handles -- both for itself and for ZDF -- the licensing to third parties of the right to telecast programming created by ZDF. Both ZDF and ZDFE have offices in New York.

2

Defendant UKTV is a joint venture that is owned jointly by BBC Worldwide Ltd. and Flextech Broadband Ltd., a division of Telewest Communications.

In this action, the Plaintiffs sue the Defendants for alleged copyright infringement, namely, for the alleged inclusion of two minutes of music, which was composed by Plaintiffs for a German movie, in a television documentary.

In 1997, Irwin commenced creation of an original musical composition "Die Weisse Holle Vom Piz Palu" (The White Hell of Piz Palu) (the "Copyrighted Work" or the "Work") pursuant to a written agreement dated November 8, 1998 between Kiparra and a Berlin-based symphony orchestra, Filmorchestra Babelsberg c.V. ("FB"), which was executed by Irwin on behalf of Kiparra in Los Angeles. Pursuant to that agreement, Kiparra granted FB a synchronization right to use the Work to accompany the 1929 German silent film of the same name. On or about March 24, 2004, Kiparra registered the Work with the U.S. Copyright Office.

In a Deal Memo dated January 25, 2001, Defendants ZDF and ZDFE entered into an agreement concerning the production of six episodes of a television program entitled "Hitler's Women," the second episode of which was entitled "Hilter's Women: Leni Riefenstahl" (the "Riefenstahl Episode").

3

According to Plaintiffs, in December 2000, Defendant ZDFE and Defendant AETN entered into an agreement to co-produce the Hitler Series for transmittal over the A&E television networks in the United States, Canada, Mexico, Central America, South America, the Caribbean, Spain, and Portugal. Involved in the negotiations for this agreement were Horst Mueller, the head of ZDFE's New York office and a member of ZDFE's management board, and Nelsa Gidney, a New York resident and U.S. citizen who, as an independent contractor, allegedly acted as a "distribution agent" for ZDFE.

According to Plaintiffs, on August 20, 2003, Defendant ZDFE also licensed Defendant UKTV to transmit the Hitler Series, including the Reifenstahl Episode, in the United Kingdom, the Channel Islands, the Isle of Man, and the Republic of Ireland.

Before ZDFE began to license the Series outside Germany, a complication arose with respect to the Riefenstahl segment of the Series. The version of the program that was broadcast in Germany included a clip from "Die Weisse Holle Vom Piz Palu" with the accompanying music created by Irwin. The clip, which occupied approximately two minutes of the approximately 50-minute program, was included because Reifenstahl appeared as an actress in "Die Weisse Holle Vom Piz Palu."

According to ZDF, for legal reasons, it was unable to acquire the right to visually display the "Die Weisse Holle Vom Piz

4

Palu" film clip outside of Germany. Accordingly, ZDF replaced the visual component of that clip with different pictorial material, while retaining the same two minutes of the Score on the segment's audio track. It was this version of the Reifenstahl episode that was broadcast outside of Germany -- including by AETN in its territory and by UKTV in its territory.

According to Plaintiffs, this version of the Reifenstahl program reproduced and duplicated a portion of the Copyrighted Work without Plaintiff's authorization beginning in October 2001. Also according to Plaintiffs, a newly configured version of the program entitled "History's Viewpoint," that also reproduced and duplicated the Copyrighted Work was transmitted in by AETN in the United States on February 12, 2005.

## The Rule 12(b) Standard

A motion to dismiss pursuant to Rule 12 must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). For the purposes of a Rule 12 motion, all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

5

On a Rule 12(b)(6) motion to dismiss, "mere conclusions of law or unwarranted deductions" need not be accepted. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994). Furthermore, the truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted. See e.g., Rapoport v. Asia Elecs. Holding Co., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000); accord Eternity Global Master Fund, 375 F.3d at 176-77.

# I. Plaintiffs Claim for Conspiracy to Violate U.S. Copyright Law is Preempted

Defendants have moved to dismiss Plaintiffs claim for conspiracy to infringe the copyright. In support of their motion, Defendants argue that New York does not recognize such a cause of action and that even if it did, it is preempted by federal copyright law.

It is determined that irrespective of whether New York recognizes a substantive tort for conspiracy to violate copyright laws[1], Plaintiffs claims are nonetheless preempted by the Copyright Act. As the Second Circuit held in Kregos v. Associated Press, 3 F.3d 656 (2d Cir. 1993), "[a] state cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." Id. at 666. On the other hand, a state law claim, is not preempted by federal copyright law where it contains an "extra element" instead of or in addition to the elements of copyright infringement such that the "nature of the [state law] action . . . is qualitatively different from a copyright infringement claim." Id.

---

[1]

This Court has previously held that there is no New York cause of action for conspiracy to violate the Copyright Act. See Calloway v. Marvel Entertainment Group, 1983 U.S. Dist. LEXIS 10506, (S.D.N.Y. 1993).

In determining whether a state law claim is preempted, the Court examines what the plaintiff "seeks to protect, the theories in which the matter is protected, and the rights sought to be enforced." Briarpatch Ltd., L .P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). The Second Circuit has instructed district courts to "tak[e] a restrictive view" of extra elements that might make a state law claim different from a federal one. Id. "In other words, state law claims that are substantively redundant of Copyright Act claims are preempted." Sharp v. Patterson, No. 03 Civ. 8772 (GEL), 2004 U.S. Dist. LEXIS 22311, 2004 WL 2480426, at *7 (S.D.N.Y. Nov. 3, 2004).

Plaintiffs argue that their conspiracy claim contains such extra elements, which they contend renders it "qualitatively different from a copyright infringement claim." Pl. Opp. at 5 (quoting Kregos, 3 F.3d at 666). Plaintiffs rely upon the fact that to establish conspiracy under New York law, "a plaintiff must allege the primary tort and four additional elements: (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." Andre Emmerich Gallery, Inc. v. Segre, No. 96 Civ. 889 (CSH), 1997 U.S. Dist. LEXIS 16899, at *12 (S.D.N.Y. Oct. 27, 1997). According to plaintiffs, the primary tort underlying their claim is copyright infringement and the four additional elements constitute "extra elements" for the purposes of

8

preemption analysis.

Courts that have confronted this issue have held that claims for conspiracy to violate the Copyright Act are preempted by federal copyright law. See Cooper v. Sony Music Entertainment, Inc., No. 01-0941(DH), 2002 U.S. Dist. LEXIS 16038, at *11-12 (S.D. Tex. Feb. 22, 2002); Brown v. McCormick, 23 F. Supp. 2d 594, 608 (D. Md. 1998); Trenton v. Infinity Broadcasting Corp., 865 F. Supp. 1416, 1428 (C.D. Cal. 1994); Aqua Bay Concepts, Inc. v. Gross Point Board of Realtors, No. 91 Civ. 74819 (JAC), 1992 U.S. Dist. LEXIS, at *10-11 (E.D. Mich. May 7, 1992). Because copyright law already "recognizes the concepts of contributory infringement[2] and vicarious copyright infringement[3] . . . concepts, which extend joint and several liability to those who participate in the copyright infringement . . . [a] civil conspiracy claim does not add substantively to the underlying federal copyright claim and should therefore be preempted." Cooper, 2002 U.S. Dist. LEXIS, at *11. In other words, regardless of the fact that a claim of

---

[2]A party may be liable for contributory copyright infringement if the party "induces, causes or materially contributes to the infringing conduct of another" with knowledge. Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971). "All persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers." Sygma Photo News, Inc. v. High Soc. Magazine, Inc., 778 F.2d 89, 92 (2d Cir. 1985).

[3]A party may be held vicariously liable for copyright infringement "when the right and ability to supervise[] coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials . . . ." Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963).

9

conspiracy may require proof of elements different than those required to prove copyright infringement, the nature of the misconduct that conspiracy law seeks to redress is not qualitatively different from that addressed by contributory and vicarious infringement claims.

Plaintiffs argue that the additional conspiracy elements render their claim of conspiracy to violate copyright law qualitatively different because its focus is on holding defendants jointly and severally liable. Pl. Opp. at 5. As noted above, theories of contributory and vicarious copyright infringement under the Copyright Act also focus specifically on holding defendants jointly and severally liable for their wrongdoing. Plaintiffs' attempt to differentiate the conspiracy claim from contributory and vicarious infringement based upon the scope of conspiracy liability is equally unavailing. See. Pl. Opp. at 6 (arguing that "conspiracy to infringe copyright is qualitatively different because, by requiring an agreement and overt act, it permits a plaintiff to hold a defendant jointly and severally liable even if the plaintiff is unable to sustain a claim of contributory or vicarious infringement.") That a conspiracy to infringe claim might encompass a broader scope of liability, does not itself render it qualitatively different than vicarious and contributory infringement. See, e.g., Aqua Bay, 1992 U.S. Dist. LEXIS, at *11 (holding where "proffered elements merely touch upon the scope of the infringement claim, but not its very nature," claim was

preempted by federal law).

Plaintiffs' claim of conspiracy to commit copyright infringement is preempted by federal copyright law, and Defendants' motion to dismiss this claim is granted.

## II. **Plaintiffs' Unfair Competition Claim is Preempted**

Defendants have also moved to dismiss Plaintiffs' claims of unfair competition under New York law. In support of their motion, Defendants argue (1) that New York's law of unfair competition does not extend to "alleged actions that amount to nothing more than copyright violations occurring `outside of the United States'"; and (2) that Plaintiffs' unfair competition claim is preempted by federal copyright law.

The law of unfair competition encompasses "a broad[] range of unfair practices which may be generally described as a misappropriation of the skill, expenditures, and labor of another." American Footwear Corp. V. General Footwear Co. Ltd., 609 F.2d 655 (2d Cir. 1979). Regardless of whether New York's law of unfair competition encompasses the copying of protected work outside of the United States, Plaintiffs claim is preempted by federal copyright law.

11

The Second Circuit has consistently held that "unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by [17 U.S.C.] section 301." Computer Associates International, Inc. v. Atlai, Inc., 982 F.2d 693 (2d Cir. 1992).

The only difference between Plaintiffs' unfair competition claim and their copyright infringement claim relates to the locus of the alleged misconduct. Plaintiffs' unfair competition claim applies the copyright infringement allegations to conduct occurring solely "outside of the United States." The question presented here, therefore, is whether the fact that the alleged misconduct took place outside of the United States renders the right asserted qualitatively different from the rights asserted under the copyright infringement cause of action.

It is determined that the nature of Plaintiffs' unfair competition claim is substantively redundant to the copyright infringement claim. [4] The gravamen of Plaintiffs' unfair competition claim is that the Defendants created and distributed to other countries an English language version of the Hitler Program which unlawfully incorporates Plaintiffs' Copyrighted Work. It is

---

[4]While there may be circumstances under which an unfair competition claim would not be preempted by federal copyright law, such as where such claims were based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets, see Kregos, 3 F.3d at 666, none of these grounds underlie Plaintiffs' claim of unfair competition in the instant case.

12

well established that "[i]n order for a Lanham Act claim to survive in addition to a copyright claim, an aggrieved author must show more than a violation of the author's protected right to credit and profit from a creation." Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 844-45 (S.D.N.Y. 2000). Plaintiffs have failed to demonstrate how the location of the copying or distribution alters the nature of the conduct or of the rights asserted. Moreover, Plaintiffs have not alleged that Defendants made an affirmative misrepresentation regarding the authorship of the Protected work. See id. (noting that "author must make a greater showing that the designation of origin was false, was harmful, and stemmed from some affirmative act whereby [the defendant] affirmatively represented itself as the owner).

Accordingly, as the Second Circuit held in Kregos, Plaintiffs' unfair competition claim is deemed to be "grounded solely in the copying of a plaintiff's protected expression," and therefore it is preempted by section 301. 3 F.3d at 666. Therefore, Defendants' motion to dismiss Plaintiffs' claim of unfair competition is granted.

## III. Defendants' Motion to Dismiss Claims for Statutory Damages and Attorneys' Fees Under the Copyright Act is Denied

Plaintiffs also claim that they are entitled to statutory damages under 17 U.S.C. § 504 and for attorneys' fees pursuant to 17 U.S.C. § 505. Defendants argue that these claims must be

13

dismissed pursuant to 17 U.S.C. § 412 because the alleged infringement in the United States commenced prior to Plaintiffs' registration of their copyright in the Score.

Section 412 states, in relevant part, that "no award of statutory damages or attorneys' fees under sections 504 and 505 shall be made for . . . `any infringement of copyright commenced after the first publication of the work and before the effective date of its registration . . . .'" 17 U.S.C. § 412. "Where a series of acts constituting continuing infringement is alleged, the infringement `commences' for purposes of determining eligibility for statutory damages and attorney's fees and costs `when the first act of infringement in a series of on-going discrete infringements occurs.'" Shady Records, Inc. v. Source Enters., No. 03 Civ. 9944 (GEL), 2004 U.S. Dist. LEXIS 26143, at *67-68 (S.D.N.Y. Jan. 3, 2005) (quoting EZ-Tixz, Inc. v. Hit-Tix, Inc., 919 F. Supp. 728, 736 (S.D.N.Y. 1996).

Plaintiffs allege that Defendants "disseminated copies of [the Program] for display, distribution and exhibition in the United States at least 11 times during the period from October, 2001 through and including May, 2004, and in diverse foreign territories." Compl. ¶ 12. Plaintiffs did not register their work with the U.S. Copyright Office until March 24, 2004. Accordingly, Plaintiffs concede that they are precluded from recovering statutory damages and attorneys' fees for Defendants' infringements

14

commenced prior to that date. Pl. Opp. at 10.

However, Plaintiffs allege that approximately one year after registering their work, in February 2005, defendant AETN broadcast what appeared to be a new program entitled "History's Viewpoint," which they allege also infringed the copyrighted work. Plaintiffs argue that such a new program constitutes a separate infringement that commenced after the registration of their work such that they would not be precluded from collecting statutory damages and attorneys' fees under Section 412.

"History's Viewpoint" does not constitute a separate infringement, rather than a continuation of a "series of ongoing discrete infringements." EZ-Tixz, 919 F. Supp. at 736. As the Fifth Circuit and this district have held, the legislative history of Section 412 "reveals Congress' intent that the statutory damages be denied not only for the particular infringement that a defendant commenced before registration, but for all of the defendant's infringements of a work if one of those infringements commenced prior to registration." Mason v. Montgomery Data, 967 F.2d 135 (5th Cir. 1992); Shady Records, 2004 U.S. Dist. LEXIS 26143, at *69. In both of the cases, the Courts held statutory damages unavailable where one of the alleged infringements of the protected work had begun prior to registration. In accordance with the above reasoning, Plaintiffs are exempted under Section 412 from recovering attorneys' fees and statutory damages for any of the

15

alleged infringement.

## IV. **UKTV Is Not Subject to Personal Jurisdiction**

Defendant UKTV moves to dismiss all claims against it based upon a lack of personal jurisdiction.

Plaintiffs bear the burden of establishing that the court has jurisdiction over a defendant when served with a Rule 12(b)(2) motion to dismiss. DiStefano v. Carozzi North American Inc., 286 F.3d 81, 84 (2d Cir.2001); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994). Because an evidentiary hearing has not been held, the Plaintiffs need only make a prima facie showing of jurisdiction through the complaint's allegations and affidavits in order to defeat the motion to dismiss.[5] CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); Network Enters. v. APBA Offshore Prods., No. 01 Civ. 11765 (CHS), 2002 U.S. Dist. LEXIS 17256, 2002 WL 31050846, at *8 (S.D.N.Y. Sept. 12, 2002).

The facts must be construed in the light most favorable to Plaintiffs. Cooper, Robertson & Partners L.L.P. v. Vail, 143 F. Supp. 2d 367, 370 (S.D.N.Y. 2001) (citing Hoffritz for Cutlery Inc.

---

[5]It should be noted that although an evidentiary hearing has not been held, Defendant UKTV did voluntarily submit to Plaintiffs' jurisdictional discovery requests.

16

v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985)). In assessing whether personal jurisdiction is authorized, the court looks to whether the defendant is either "present" in New York within the meaning of CPLR § 301 or has committed acts within the scope of CPLR § 302, New York's long-arm statute. Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). If the exercise of jurisdiction is appropriate under the long-arm statute, the court must decide whether such exercise comports with the requisites of due process. Id.

**A.  UKTV Is Not "Present" In New York Under CPLR § 301**

Pursuant Section 301 of New York's Civil Practice Law and Rules, an unlicensed foreign corporation is considered to be "present" in the State and subject to the general personal jurisdiction of the courts of New York if such corporation is "doing business" in the state. See Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 741, 565 N.E.2d 488, 490 (1990); accord Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir.2000). A defendant corporation is deemed to be "doing business" in New York if it has engaged in "such a continuous and systematic course of [business] here that a finding of its 'presence' in this jurisdiction is warranted[.]" Landoil, 77 N.Y.2d at 33, 563 N.Y.S.2d at 741, 565 N.E.2d at 490 (citing Laufer v. Ostrow, 55 N.Y.2d 305, 309-310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982); Delagi v.

17

Volkswagenwerk AG, 29 N.Y.2d 426, 430-31, 328 N.Y.S.2d 653, 655-56, 278 N.E.2d 895, 896 (1972); Frummer v. Hilton Hotels Int'l, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967). "Occasional" or "casual" contacts are insufficient to confer jurisdiction. Factors courts consider to determine whether a foreign corporation is "doing business" include whether the defendant has an office in the State, solicits business in the State, owns property or bank accounts within the State, or has employees or agents within the State. Landoil, 918 F.2d at 1043.

UKTV argues that personal jurisdiction may not be obtained against it because it maintains no property in New York, has no bank accounts here, and does no business in the State. Plaintiffs base their argument for personal jurisdiction on the presence and activities of joint venture companies, the BBC Worldwide and Flextech Television, which Plaintiffs allege comprise UKTV.

Plaintiffs are correct in their assertion that "under New York law, jurisdiction may be obtained over a foreign company . . . if the relationship between the foreign corporation and [a] local one gives rise to the valid inference of an agency relationship." Dorfman v. Marriott Int'l Hotels, Inc., No. 99 Civ. 10496 (CSH), 2002 U.S. Dist. LEXIS 72, at *8 (S.D.N.Y. Jan. 3, 2002). Courts will extend such jurisdiction over a foreign parent corporation if the jurisdictional acts of its subsidiary in New York can be

18

imputed to the foreign parent corporation. See Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97, 204 N.E.2d 329, 256 N.Y.S.2d 129 (1965). By the same token, the jurisdictional acts of a parent in New York may also in certain circumstances be imputed to a foreign subsidiary. Dorfman, 2002 U.S. Dist. LEXIS 72, at *7. "The corporate veil will be pierced for jurisdictional purposes, however, only when the subsidiary is acting as an agent for the parent, or the parent's control is so complete that the subsidiary is a `mere department' of the parent." See ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 51 (S.D.N.Y. 1999) (citing Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996)). In other words, a Court will only find jurisdiction over the foreign subsidiary when "the activities of the parent show a disregard for the separate corporate existence of the subsidiary." Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984).

The Second Circuit confronted an analogous situation in Jazini v. Nissan Motor Co., 148 F.3d 181 (2d Cir. 1998). There, the Court held that the alleged presence of a U.S.-based subsidiary was insufficient to obtain personal jurisdiction over a Japanese automobile manufacturer. The Court explained that "for New York courts to have personal jurisdiction in that situation, the subsidiary must be either an `agent' or a `mere department' of the foreign parent." Id. at 184.

19

In making the determination of whether a foreign subsidiary may be imputed with the acts of its parent(s), courts must consider four factors: (1) common ownership; (2) the subsidiary's financial dependency on the parent; (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities"; and (4) the degree of control exercised by the parent. Jazini, 148 F.3d at 185 (internal quotation omitted).

In order to establish jurisdiction, Plaintiffs argue that UKTV is a joint venture between the BBC Worldwide and FlexTech Television. Plaintiffs allege the following with respect to BBC Worldwide: (1) BBC Worldwide is "the commercial arm" of the British Broadcasting Corporation (the "BBC"); (2) the BBC has offices in New York; (3) the BBC mandates the copyright notices to be used by UKTV; (4) Defendant UKTV admits, in interrogatory answers to using "a British subsidiary of" the BBC "for services of BBC staff relating to programme commissioning, acquisition, scheduling and assorted legal and business affairs"; and (5) one of the six members of the board of directors of UKTV is also on the board of directors of BBC Worldwide.

With respect to Telewest, plaintiffs allege the following: (1) Telewest is "the BBC's partner in UKTV" through its "content division" Flextech; (2) Telewest is incorporated in the

20

State of Delaware and has a registered office address there; (3) Telewest trades on the Nasdaq National Market in New York, and was de-listed from the London Stock Exchange; (4) UKTV admits to paying "one or more British subsidiaries of Telewest" "for services relating to negotiation of air-time advertising sales and programme sponsorship; channel distribution and IT/computer services; and transactional processing"; and (5) one of the six members of the board of directors of UKTV is also on the board of directors of Telewest.

As an initial matter, it is determined that the jurisdictional relationship of UKTV to BBC Worldwide and Telewest should be analyzed using the same principles that are used to assess whether foreign subsidiaries may be imputed with jurisdiction based upon the conduct a parent corporation. The parties have presented no arguments nor reasons for analyzing the relationship of corporations that are the product of a joint venture differently than under the framework laid out in Jazini, 148 F.3d at 184, for corporations related as parents and subsidiaries,

In order "[t]o establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary does all of the business which [the parent corporation] could do were it here by its own officials." Jazini, 148 F.3d at 184. As noted above, this analysis "is the same whether it is the parent or the

21

subsidiary over which jurisdiction is sought by reason of the other's presence here." Tripmasters, Inc. v. Hyatt Int'l Corp., 696 F. Supp. 925, 932 (S.D.N.Y. 1988).

Plaintiffs have failed to meet the agency standard. The facts to which Plaintiffs point establish at most that BBC Worldwide and Telewest themselves would be subject to personal jurisdiction in New York. The facts, however, do not demonstrate that UKTV acts as an agent of either or both corporation such that jurisdiction should be extended to UKTV. The facts that BBC mandates copyright notices to be used by UKTV and that UKTV contracts with other Telewest subsidiaries fall well short of establishing that BBC and Telewest conduct "all the business that [UKTV] could do were it here." Jazini, 148 F.3d at 184.

Nor does any of the evidence above establish that UKTV is a "mere department" of BBC Worldwide or of Telewest, or vice versa. In order to establish that a subsidiary is a "mere department" of the parent, a plaintiff must show that the parent exerts "pervasive control over the subsidiary." Id. at 185. While Plaintiffs refer to the fact that UKTV shares one board member with the BBC and one board member with Telewest, Jazini expressly held such evidence inadequate to demonstrate that a subsidiary acts as a "mere department" of a parent. Id. "Even in those cases in which a New York parent has exerted substantial aspects of control over a wholly-owned foreign subsidiary, courts have refused to find

22

jurisdiction." Tripmasters, 696 F. Supp. at 937; see also Saraceno v. S.C. Johnson & Son, Inc. , 83 F.R.D. 65, 71 (S.D.N.Y. 1979) (recognizing that "under New York law a parent of a multinational corporate enterprise may make broad policy decisions for its subsidiaries . . . . [s]uch control is inherent in the parent-subsidiary relationship and does not justify labeling a subsidiary a `mere department' of the parent").

Taking all of these facts, in the light most favorable to the Plaintiffs, a prima facie case that Defendant UKTV is "present" in New York has not been established.

## B. Plaintiffs Have Failed to Make a Prima Facie Showing of Long-Arm Jurisdiction Over UKTV

UKTV also argues that it is not amenable to jurisdiction in New York under New York's long-arm statute, CPLR Section 302. Section 302 provides that:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

23

(i) regularly does or solicits business, or engages in
    any other persistent course of conduct, or derives
    substantial revenue from goods used or consumed or
    services rendered, in the state, or

    (ii) expects or should reasonably expect the act to have
    consequences in the state and derives substantial revenue
    from the interstate or international commerce; or

4. owns, uses or possesses any real property situated within
the state.

N.Y. C.P.L.R. § 302(a).


        Although Defendant UKTV argues that jurisdiction may not
be maintained over it under CPLR § 302, in their opposition,
Plaintiffs do not make any arguments in support of a finding of
jurisdiction pursuant to CPLR § 302. Because Plaintiffs fail to
address this argument or to point to any allegations in the
complaint that would support a finding of jurisdiction under
Section 302, it is determined that they have not met their burden
of establishing a prima facie case for this court to exercise long-
arm jurisdiction over Defendant UKTV.


## C.    Rule 4(k)(2) Does Not Support Jurisdiction Over UKTV


        Plaintiffs argue that even if jurisdiction over UKTV is
not available under Sections 301 or 302, personal jurisdiction may
be exercised over UKTV pursuant to Rule 4(k)(2), Fed. R. Civ. P.

        Rule 4(k)(2) acts as a personal jurisdiction gap-filler

24

"in the enforcement of federal law," Fed. R. Civ. P. 4(k)(2),
permitting "courts to exercise personal jurisdiction over
defendants with sufficient contacts with the United States
generally, but insufficient contacts with any one state in
particular." In Re Terrorist Attacks on September 11, 2001, 349 F.
Supp. 2d 765, 807 (S.D.N.Y. 2005). For a court to exercise in
personam jurisdiction over a defendant pursuant to Rule 4(k)(2),
three prerequisites must be fulfilled: (1) one or more of the
claims asserted against the defendant must arise under federal law;
(2) personal jurisdiction must not exist over the defendant in New
York or another state; and (3) sufficient contacts with the United
States, as a whole, must exist to satisfy the requirements of the
due process clause of the Fifth Amendment. See Daventree Limited
and Audia Investments Ltd. v. Republic of Azerbaija, 349 F. Supp.
2d 736 (S.D.N.Y. 2004).

Jurisdiction under Rule 4(k)(2) is not available against
Defendant UKTV because neither of the two claims alleged against
UKTV -- (1) unfair competition under New York law and (2) violation
of British copyright law -- "arise under federal law," as
specifically required by the rule. Fed. R. Civ. P. 4(k)(2).
Because Rule 4(k)(2) "extends the reach of federal courts to impose
jurisdiction" only against defendants "against whom federal law
claims are made," Rule 4(k)(2) does not confer this Court with

25

personal jurisdiction over Defendant UKTV.[6]

## V.  **Forum Non Conveniens**

Finally, Defendants have moved to dismiss the remaining claims on forum non conveniens grounds.

The equitable doctrine of forum non conveniens allows a court to dismiss an action when "the convenience of the parties and the ends of justice would best be served" by such dismissal. Murray v. British Broad. Corp., 81 F.3d 287, 292-93 (2d Cir. 1996). Dismissal for forum non conveniens is appropriate even if the court is a permissible venue and has proper jurisdiction over the claim. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 91 L. Ed. 1055, 67 S. Ct. 839 (1947); PT United Can Co. Ltd. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998). District courts have discretion to decide whether to dismiss for forum non conveniens. See Piper Aircraft, 454 U.S. at 257; Alfadda v. Fenn, 159 F.3d 41, 45 (2d Cir. 1998).

"There is ordinarily a strong a presumption in favor of the plaintiff's choice of forum." Piper Aircraft Co. v. Reyno, 454

---

[6]Having found that no federal claims have been asserted against Defendant UKTV, as required by Rule 4(k)(2), it is unnecessary to reach the Fifth Amendment due process inquiry, i.e., whether or not UKTV's contacts with the United States are sufficient to reasonably anticipate being haled into court here. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985).

U.S. 235, 255, 102 S. Ct. 252, 265-66, 70 L. Ed. 2d 419 (1981).
However, the degree of deference accorded the plaintiff's forum
choice depends on the residency of the plaintiff, for while, on the
one hand, "a plaintiff's choice of forum is entitled to greater
deference when the plaintiff has chosen [his] home forum," Piper,
454 U.S. at 255, "the choice of a United States forum by a foreign
plaintiff is entitled to less deference."   Iragorri v. United
Technologies Corp., 274 F.3d 65, 71 (2d Cir. 2001)(citing Piper).
Nevertheless, the rule is not "so abrupt or arbitrary" as to give
deference to the plaintiff's choice "only when the plaintiff sues
in the plaintiff's home district." Id. at 72.  Instead, the Second
Circuit has adopted a "sliding scale" concept of deference, giving
"greater deference to a plaintiff's forum choice to the extent that
it was motivated by legitimate reasons," like convenience, "and
diminishing deference" to a plaintiff's forum choice to the extent
it was motivated by tactical advantage," i.e., forum-shopping. Id.
at 73.   Thus, "the greater the plaintiff's or the lawsuit's bona
fide connection to the United States and to the forum of choice and
the more it appears that considerations of convenience favor the
conduct of the lawsuit in the United States, the more difficult it
will be for the defendant to gain dismissal for forum non
conveniens." Id. at 72.

Beyond the plaintiff's forum choice, the Supreme Court
has set out a list of private and public interest factors that a
district court must weigh in determining whether dismissal on forum

27

non conveniens grounds is proper. See Gilbert, 330 U.S. at 507. The private interest factors relate to the convenience of the litigants themselves and include: (1) the relative ease of access to proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; (3) possibility of view of premises; (4) enforceability of a judgment if one is obtained; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. at 508. The public interest factors, meanwhile, include: (1) preventing congestion of the court's docket; (2) the local interest in having localized controversies decided at home; (3) the appropriateness of trying a case in a forum that is at home with the state law that must govern the case; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of forum law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. Id.

A forum non conveniens inquiry requires flexibility, and no one factor "will justify or require either grant or denial of remedy." Piper, 454 U.S. at 249-50 (citations omitted). However, a defendant's burden with respect to these factors is always high; "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gilbert, 330 U.S. at 508; see also Iragorri, 274 F.3d at 74-75 (noting that even when a plaintiff's forum choice is entitled to a lesser degree of deference, "the action should be dismissed only if the chosen

28

forum is shown to be genuinely inconvenient and the selected forum significantly preferable").

In short, a Court resolving a motion to dismiss for forum non conveniens proceeds with the following steps. First, the Court must decide what degree of deference is owed to plaintiff's choice of forum. See Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003), cert. denied, 540 U.S. 1149, 157 L. Ed. 2d 1041, 124 S. Ct. 1145 (2004). Next, the court must determine whether an adequate alternative forum is available. See id. Finally, if an adequate alternative forum is available, the court must then consider the relevant private and public interest factors described above and determine whether "the balance of convenience tilts strongly in favor of trial in the foreign forum." R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991).

## A. Deference To The Plaintiff's Choice of Forum

In the instant case, Plaintiffs -- a California resident[7] and a California corporation whose sole shareholders are the individual plaintiff's wife and himself -- brought suit in the Southern District of New York. According to Plaintiffs, the Southern District was chosen because three of the four defendants

---

[7]As a foreign citizen (of Australia) residing in the United States, plaintiff Irwin is entitled to the same deference regarding his choice of forum accorded to U.S. citizens. See e.g., Wiwa Royal Dutch Petroleum Co., 226 F.3d 88, 103 (2d Cir. 2000) (reversing dismissal on forum non conveniens grounds).

(AETN, ZDF, and ZDFE) have offices in New York and because significant activity concerning the production and marketing of the Hitler Program took place there. Additionally, Plaintiffs submit that their financial means prohibit them from bringing suit in a foreign forum, such as Germany or the United Kingdom. As such, the motivations underlying Plaintiffs' choice of this forum are deemed legitimate, and not the product of efforts to gain a tactical advantage.

The Defendants argue that the deference accorded Plaintiffs' choice of forum is diminished here by virtue of the fact that the contract Plaintiff corporation Kiparra entered into was drafted in Germany, written in the German language, governed by German law, and entered into with the Babelsberg Orchestra, a German corporation, which contracted for the services of Plaintiffs pursuant to a commission from Defendant ZDF, a German corporation. This argument is without merit as Plaintiffs' claims do not arise from a breach of the aforementioned agreement, but rather from Defendants' infringements of Plaintiffs' copyright in the United States and elsewhere.

Furthermore, it was reasonable for Plaintiffs to bring their lawsuit in the United States given that the Copyrighted Work was created and registered here. Therefore, as Plaintiff's lawsuit has bona fide connections with this forum, their choice of the Southern District is entitled to significant deference.

## B. Availability of An Adequate Alternative Forum

The "requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in `rare circumstances' when `the remedy offered by the other forum is clearly unsatisfactory.'" Murray v. British Broadcasting Corp., 81 F.3d 287, 292 (2d Cir. 1996 (quoting Piper, 454 U.S. at 254 n.22).

Defendants argue that Germany is an adequate alternative forum because ZDF and ZDFE are German corporations subject to the jurisdiction of the German courts. Additionally, they argue that the non-German Defendants, AETN and UKTV -- which are being indemnified by ZDF -- have agreed to submit to the jurisdiction of the German courts. Accordingly, they contend that Germany is an adequate alternative forum because all of the Defendants are amenable to process there. See DiRienzo v. Philip Servs. Corp., 232 F.3d 49, 57 (2d Cir. 2000) ("The alternate forum will normally be adequate so long as the defendant is amenable to process there.").

The only argument Plaintiffs offer in opposition to an adequate alternative forum is based on Mr. Irwin's assertions that he is of modest means and that the cost of bringing suit in Germany would be financially prohibitive.

31

While a party's claim of financial hardship is not irrelevant to forum non conveniens analysis, it "is not an appropriate aspect of determining the availability of an alternative forum . . . ." Gross v. British Broadcasting Corp., 386 F. 3d 224, 231 (2d Cir. 2004).

Plaintiffs have not raised any arguments calling into question the competency of German courts to adjudicate a copyright dispute such as this one or the availability of redress in German courts. Accordingly, it is determined that Germany is an adequate alternative forum to adjudicate Plaintiffs' claims.

## C. Private Interest Factors

Having found that an adequate alternative forum exists, the final step in the analysis is to weigh the private and public interest factors "to determine which forum will be the most convenient and will best serve the ends of justice." Tel. Sys. Int'l v. Network Telecom PLC, 303 F. Supp. 2d 377, 380 (S.D.N.Y. 2003) (quoting Capital Currency Exch., N.V. v. Nat'l Westminster Bank, PLC, 155 F.3d 603, 609 (2d Cir. 1998)). Because Plaintiffs' choice of this forum must be afforded significant- deference, the Court can only dismiss the present action on forum non conveniens grounds if the Gilbert private and public interest factors weigh heavily in favor of litigation in Germany.

The "private interest factors" to be considered include the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; the enforceability of a judgment; the possibility of viewing premises; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." Gilbert, 330 U.S. at 508.

Defendants contend that the private interest factors overwhelmingly favor the dismissal of this action. They argue that the sources of proof and witnesses are located in foreign countries, that most of the prospective witnesses are located in Germany, that most of such witnesses would be unable to testify in an English-speaking legal proceeding without interpreters, that documents concerning the Hitler Program are in German, and that defendants AETN and UKTV have agreed to submit to the jurisdiction of the German Courts and therefore could be compelled to testify there as witnesses. Defendants also contend that some of the potentially material witnesses are no longer under their control and therefore will be beyond the jurisdiction and subpoena power of this Court.

Plaintiffs argue that the inconvenience to defendants should be discounted since Defendants ZDF and ZDFE have long maintained offices in the forum, and because Defendant AETN has its

principal place of business here. Furthermore, they point out that many of the material documents written in the German language have already been translated by Defendants for the purposes of this motion.

Defendant ZDF, which is based in Germany, was the sole producer of the Hitler Program and the Series that are at issue. Accordingly, everyone involved in the conception, creation, and production of the Series are most likely located in Germany. Further, within ZDFE, with the exception of Horst Mueller (who participated in the negotiation of the agreement between ZDFE and AETN), everyone involved in the licensing of the Series to other broadcasters is based in Mainz, Germany.

The Court is mindful that the inconvenience of the Defendants is not exceedingly great in light of the existence of offices and some allegedly integral witnesses in New York. Nevertheless, the expense of having to transport the majority of the witnesses for this case to American courts[8], see Blimpie Int'l v. ICA Menyforetagen AB, No. 96 Civ. 3082 (RWS), 1997 U.S. Dist. LEXIS 3950, at *15 (S.D.N.Y. Mar. 25, 1997), and the burden of

---

[8]In terms of the burdensomeness of witness-travel, the Honorable Jon Newman of the Second Circuit has appropriately noted that "in light of the realities of modern transportation and communications . . . [a] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel." Calavo Growers of California v. Generali Belgium, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J. concurring).

having to translate much of the relevant evidence into English, see Tel. Sys. Int'l, 303 F. Supp. 2d at 382-83, both tip the balance in favor of Defendants in the private interest factor analysis, although not overwhelmingly so.

## D. Public Interest Factors

The "public interest factors" include the interest in avoiding administrative difficulties arising from court congestion; the interest in avoiding the unfair imposition of jury duty on citizens of an unrelated forum; the "local interest in having localized controversies decided at home"; the interest in having a diversity case tried in a forum that is at home with the law governing the case, the interest in avoiding unnecessary problems with the conflict of law, or the application of foreign laws; and the interest "in cases which touch the affairs of many persons" in insuring that such individuals will have access to the trial. Gilbert, 330 U.S. at 508-09.

Defendants' contention that the Southern District of New York is among the busiest courts in the country and that "this case would proceed at least as expeditiously in Germany" does not tip the balance heavily in favor of dismissing this case on forum non conveniens grounds. While it is well-recognized that the Southern District of New York has a congested docket, it is also widely

accepted that New York courts are well equipped to handle complex litigations such as this one. See, e.g., Rahl v. Bande, 04 Civ. 1019 (WCC), 2005 U.S. Dist. LEXIS 15576, at *38-39 (S.D.N.Y. July 22, 2005). Defendants have not put forth any evidence indicating that this litigation would reach a faster resolution in German courts or that this Court would be incapable of resolving it expeditiously. Therefore, the most that can be said about this factor -- the administrative difficulties arising from court congestion -- is that it is neutral.

A "district court must [also] guard its docket from disputes with little connection to [the] forum." Tel. Sys. Int'l, 303 F. Supp. 2d at 384 (citations omitted). Although this case involves transactions and contracts in both New York and Germany, it cannot be said that this case has little connection to this forum or that Germany is more "closely related" to the litigation. See Blimpie, 1997 U.S. Dist. LEXIS 3950, at *23. As noted above, the case primarily centers around the infringement of a copyright registered with the United State Copyright Office. U.S. Citizens, and residents of this forum, have an interest in ensuring that works protected with the U.S. Copyright office are protected against infringement within U.S. borders and abroad.

Furthermore, as noted, ZDF and ZDFE both have offices in New York, and AETN's primary place of business is located in New York. While the contracts relating to Plaintiff's services were

36

prepared in Germany, the agreement between ZDFE and AETN relating to the Hitler Program was negotiated in New York and was executed by AETN in New York. Finally, the Reifenstahl Episode that allegedly infringed the protected work was broadcast in New York, as well as in the rest of the United States. Incidentally, this version of the Hitler Program was not broadcast in Germany. Accordingly, there are adequate connections to New York.

For the same reasons this litigation is found to be adequately connected to this forum, so too is it determined that it would not be burdensome to impose jury duty upon the citizens of this forum to resolve this issue.

Defendants also contend that the applicability of foreign law weighs against retention of Plaintiffs' claims in an American court. Defendants are correct that the Complaint specifically calls for the application of German and British copyright law, and that the applicability of foreign law often points toward dismissal. See e.g., Rahl, 2005 U.S. Dist. LEXIS 15576, at *48. However, it is also well-established that the need to apply foreign law alone is not sufficient to warrant dismissal. See Piper Aircraft, 454 U.S. at 260 n.29. Moreover, the Complaint here calls for the application of German copyright law in addition to the application of U.S. copyright law. Given the applicability of the law of both fora, it cannot be said that this factor tips overwhelmingly in favor of Defendants.

37

In sum, although some of the Gilbert public and private factors do weigh slightly in favor of Germany, the at-most small balance favoring a forum non conveniens dismissal is insufficient to overcome the heavy presumption in favor of Plaintiffs' choice of this forum. Accordingly, Defendants' motion to dismiss the Complaint on forum non conveniens grounds is denied.

## VI. Conclusion

For the reasons set for the above, the motion to dismiss Counts 2 and 5 (for conspiracy to violate U.S. copyright law and for unfair competition) is granted. The motion to dismiss Plaintiffs' claims for statutory damages and attorneys' fees under the Copyright Act is also granted.

Defendant UKTV's motion to dismiss for lack of personal jurisdiction is granted. The motion to dismiss the remaining claims on forum non conveniens grounds is denied.

It is so ordered.

**New York, NY**
**February** /6 **, 2006**

**ROBERT W. SWEET**
**U.S.D.J.**